[Cite as *Esposito v. Mauger*, 2021-Ohio-2808.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

NICHOLAS A. ESPOSITO

    Appellant

    v.

JAMES J. MAUGER

    Appellee

C.A. No.    20AP0035

APPEAL FROM JUDGMENT
ENTERED IN THE
WAYNE COUNTY MUNICIPAL COURT
COUNTY OF WAYNE, OHIO
CASE No.    2019 CVC-H 000301

DECISION AND JOURNAL ENTRY

Dated: August 16, 2021

TEODOSIO, Judge.

{¶1} Plaintiff-Appellant, Nicholas Esposito, appeals from the judgment of the Wayne County Municipal Court, granting summary judgment to Defendant-Appellant, James Mauger. This Court affirms.

I.

{¶2} Mr. Esposito was injured while golfing with his father at Chippewa Golf Course. At the time of his injury, he was seated in a golf cart that was parked in the rough on the right side of his southbound fairway. Mr. Esposito had his feet propped up on the golf cart's dash and was waiting for the other players in his group to hit their balls. As Mr. Esposito waited, Mr. Mauger hit a tee shot from an adjacent, northbound fairway. The rough on the right side of Mr. Mauger's fairway abutted the rough on the right side of Mr. Esposito's fairway where Mr. Esposito was parked. When Mr. Mauger teed off, his ball drifted right, entered the rough between his and Mr. Esposito's fairways, flew through the open space at the front of Mr. Esposito's golf cart, and struck

him in the groin. As a result of the impact, Mr. Esposito suffered a ruptured testicle that had to be surgically removed.

{¶3} Mr. Esposito filed a personal injury suit against Mr. Mauger alleging one count of negligence and one count of reckless and intentional conduct. Mr. Mauger answered the complaint and pleaded assumption of the risk as a defense. He also later moved for summary judgment on the basis that Mr. Esposito had assumed the risk of his sports-related injury, as it was not the result of any reckless or intentional conduct. Mr. Esposito filed a brief in opposition and alleged that a genuine issue of material fact existed as to whether Mr. Mauger had engaged in reckless and/or intentional conduct when he hit his tee shot. Mr. Mauger filed a reply brief, and the trial court took the matter under advisement.

{¶4} The trial court found that no genuine issue of material fact existed on the issue of recklessness and that Mr. Mauger was entitled to judgment as a matter of law. Thus, the court dismissed Mr. Esposito's complaint with prejudice.

{¶5} Mr. Esposito now appeals from the trial court's judgment in favor of Mr. Mauger and raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN ITS OCTOBER 6, 2020 JUDGMENT ENTRY
GRANTING SUMMARY JUDGMENT TO DEFENDANT.

{¶6} In his assignment of error, Mr. Esposito argues that the trial court erred when it granted Mr. Mauger's motion for summary judgment. Specifically, he argues that genuine issues of material fact remain as to whether Mr. Mauger engaged in reckless and/or intentional conduct when he hit his tee shot while Mr. Esposito was in range. We disagree.

{¶7}	Appellate review of an award of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Summary judgment is appropriate under Civ.R. 56 when: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977), citing Civ.R. 56(C). A court must view the facts in the light most favorable to the non-moving party and must resolve any doubt in favor of the non-moving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359 (1992). A trial court does not have the liberty to choose among reasonable inferences in the context of summary judgment, and all competing inferences and questions of credibility must be resolved in the nonmoving party's favor. *Perez v. Scripps–Howard Broadcasting Co.*, 35 Ohio St.3d 215, 218 (1988).

{¶8}	The Supreme Court of Ohio has set forth the nature of this burden-shifting paradigm:

> [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

*Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).

{¶9} "[T]o establish a cause of action for negligence, the plaintiff must show (1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulted therefrom." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 8. "[P]rimary assumption of risk, when applicable, prevents a plaintiff from establishing the duty element of a negligence case." *Stewart v. Urig*, 176 Ohio App.3d 658, 2008-Ohio-3215, ¶ 25 (9th Dist.), quoting *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 433 (1996). "Underlying this judicially created doctrine is the notion that certain risks are so inherent in some activities that they cannot be eliminated." *Otterbacher v. Brandywine Ski Center, Inc.*, 9th Dist. Summit No. 14269, 1990 WL 72327, *4 (May 23, 1990). Consequently, no duty to protect against them arises. *Id.*

{¶10} "Where individuals engage in recreational or sports activities, they assume the ordinary risks of the activity and cannot recover for any injury unless it can be shown that the other participant's actions were either reckless or intentional * * *." (Internal quotations omitted.) *Marchetti v. Kalish*, 53 Ohio St.3d 95 (1990), syllabus. Conduct is not reckless if it is "a foreseeable, customary part of the sport * * *." *Thompson v. McNeil*, 53 Ohio St.3d 102 (1990), paragraph two of the syllabus, *modified on other grounds*, *Anderson* at paragraph one of the syllabus. When determining whether conduct is a foreseeable, customary part of a sport, a court must consider "the rules and customs of the game and the facts of the incident." *Thompson* at 105. For example, a golfer who angrily throws his club and injures another player will be liable for that player's injuries as club throwing is not a customary part of golf. *See id.* Conversely, a golfer who hits another player with his ball may or may not incur liability. *See id.* at 106. "Shanking the ball is a foreseeable and not uncommon occurrence in the game of golf. The same is true of hooking, slicing, pushing, or pulling a golf shot." *Id.* at 106. If, however, "a golfer knows another is within the line of flight of his shot and fails to offer the customary warning of 'fore,' * * * [s]uch

conduct could amount to reckless indifference to the rights of others." *Id.* at 104. "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, ¶ 34.

{¶11} Mr. Mauger moved for summary judgment against Mr. Esposito based on primary assumption of the risk. It was Mr. Mauger's position that Mr. Esposito assumed the risk of his sports-related injury and failed to set forth any evidence of intentional or reckless conduct. Meanwhile, Mr. Esposito maintained that Mr. Mauger engaged in reckless and/or intentional conduct when he hit his ball, as he should have known that Mr. Esposito was positioned within striking range. We independently examine each type of alleged conduct.

Intentional conduct

{¶12} A person intends to do an act when he "'desires to cause [the] consequences of his act'" or "'believes that the consequences are substantially certain to result from it.'" *Marchetti*, 53 Ohio St.3d at 96, fn. 2, quoting 1 Restatement of the Law, 2d Torts, Section 8A, at 15 (1965). While a person who acts recklessly may realize that there is a strong probability harm may result from his act, a person who acts intentionally desires to bring about that harm. *Marchetti* at 96, fn. 3, quoting 1 Restatement of the Law, 2d Torts, Section 500, at 590, Comment f (1965).

{¶13} Mr. Esposito specifically admitted during his deposition that he had no evidence or reason to believe that Mr. Mauger intentionally tried to hit him with his tee shot. When asked, he conceded that Mr. Mauger had simply hit an errant shot. Because Mr. Esposito failed to set forth any evidence of Mr. Mauger's desire to hit him with his tee shot, the trial court did not err when it entered summary judgment in favor of Mr. Mauger on Mr. Esposito's claim of intentional conduct. *See Marchetti* at 100 (summary judgment deemed appropriate where plaintiff's own testimony

demonstrated that the defendant did not act intentionally). To the extent Mr. Esposito argues otherwise, his assignment of error is overruled.

Reckless conduct

{¶14} During his deposition, Mr. Mauger testified that he routinely golfed, belonged to a league, and was playing with three other league members when his tee shot struck Mr. Esposito. Before Mr. Mauger hit his ball, he did not notice Mr. Esposito's golf cart because it was parked about 170-175 yards away in the rough that adjoined their two fairways. He first noticed the cart when he hit his ball and began following its flight path. According to Mr. Mauger, it was windy that day, and the wind caught his ball and pushed it right. When he realized that his ball was heading toward Mr. Esposito's cart, Mr. Mauger testified, he and at least one other member of his foursome yelled fore. He indicated that there was no visible reaction on Mr. Esposito's part and, initially, he did not realize that his ball had struck Mr. Esposito. When the rest of his foursome finished hitting their tee shots, he looked over and saw Mr. Esposito on the ground.

{¶15} Mr. Mauger testified that he and his cart partner drove over to Mr. Esposito and Mr. Esposito's father. According to Mr. Mauger, he asked the father whether he had heard them yell fore. It was Mr. Mauger's testimony that the father said they had not heard anything because they were playing music too loudly.

{¶16} The three other members of Mr. Mauger's foursome also testified by way of deposition. Richard Blough, a recreational golfer with 55 years of experience, testified that at least two members of their foursome yelled fore when Mr. Mauger's ball began traveling toward Mr. Esposito's cart. Although the cart was parked within striking range, Mr. Blough opined that the rules of golf did not require Mr. Mauger to wait for Mr. Esposito to move before he hit his tee shot. That is because Mr. Esposito was not parked in their fairway. Mr. Blough explained that having

another golfer in range off the fairway and having another golfer in range ahead on the fairway are "entirely two different things." According to Mr. Blough, custom would dictate only that the golfer who has another player positioned ahead, withing striking range, on the golfer's own fairway wait to hit his ball.

{¶17} Byron Lautenschleger, a recreational golfer who played on social leagues for years, also testified that someone in their foursome yelled fore after Mr. Mauger hit his ball. Much like Mr. Mauger, Mr. Lautenschleger testified that he did not notice Mr. Esposito's cart until after Mr. Mauger struck his ball. He also confirmed that the cart was parked about 175 yards away from their tee box and was not parked in their fairway.

{¶18} The final member of Mr. Mauger's foursome, Richard Mazon, testified that he was an avid golfer with 55 years of experience. He testified that it was windy the day that they played and, when Mr. Mauger hit his tee shot, his ball faded to the right. Mr. Mazon estimated that there was about 30 yards of rough connecting their fairway with Mr. Esposito's fairway and that Mr. Esposito's cart was parked near the mid-point of the two roughs. He stated that, when Mr. Mauger's ball faded right, multiple members of their foursome yelled fore. Before that point, Mr. Mazon had not noticed Mr. Esposito's cart. He testified that the general rule in golf is that a player not hit when another player is ahead on the same fairway and within striking range. Much like Mr. Blough, he opined that the general rule does not apply when the other player is in a different fairway.

{¶19} Upon review, we must conclude that Mr. Mauger satisfied his initial *Dresher* burden by setting forth evidence that he did not act recklessly when he hit his tee shot. *See Dresher*, 75 Ohio St.3d at 293. There was no evidence that Mr. Esposito was parked in Mr. Mauger's fairway such that the customary rules of golf would have required Mr. Mauger to refrain from

hitting. Moreover, all four members of Mr. Mauger's foursome testified that one or more individuals in their group yelled fore when they realized that Mr. Mauger's tee shot was heading toward Mr. Esposito's cart. Mr. Mauger set forth evidence that he did not consciously disregard a known or obvious risk of harm to Mr. Esposito. *See Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, at ¶ 34. Accordingly, he satisfied his initial burden, and the burden shifted to Mr. Esposito to set forth evidence of a genuine issue of material fact on that issue. *See Dresher* at 293.

{¶20} Mr. Esposito and his father both testified by way of deposition. The father testified that he was an experienced golfer who played several times a week. On the day in question, he and his son parked their golf cart in the rough on the right side of their fairway because that was where his son had hit his tee shot. The father denied that they were playing music but agreed that they were waiting for other players on their fairway to hit. Though Mr. Mauger's tee box was in the father's line of sight, he testified that he paid no attention to Mr. Mauger or his foursome. Indeed, he testified that it "was none of [his] business" what Mr. Mauger's foursome was doing because they were playing an entirely different fairway and "[y]ou can't watch everybody on the whole golf course * * *." The father stated that he never heard anyone yell fore. Even so, he could not say whether that was because no one yelled fore or because he simply did not hear it.

{¶21} Mr. Esposito testified that golf was a passion, that he was PGA certified, and that he had played Chippewa Golf Course more than 40 times before his injury occurred. On the day in question, Mr. Esposito's tee shot landed in the rough on the right side of his fairway, so he and his father parked their golf cart in that spot. Mr. Esposito testified that he saw Mr. Mauger's foursome on the tee box of the adjacent fairway but assumed they would wait for him to move because he was "very visible" from their tee box. Even so, he admitted that he was not aware of

any specific rule regarding whether a player at the tee box or a player in the rough should hit first. He indicated that it was "really up to the people that are involved in it" to decide who hits first.

{¶22} Mr. Esposito denied that he and his father were playing music in their golf cart when he was struck with Mr. Mauger's ball. It was his testimony that he never heard anyone yell fore and was not aware of any attempts on the part of Mr. Mauger or his foursome to warn him. Yet, he also made the following concessions:

> Q. If you didn't have music playing, then why didn't you hear the fores that were yelled at you before this incident?
>
> A. The wind was pretty aggressive that day.
>
> Q. So the wind is the reason why you didn't hear?
>
> A. I guess, yes.
>
> Q. Do you have any other explanation for why you didn't hear other than the wind?
>
> A. I do not.

Thus, Mr. Esposito conceded that windy course conditions affected his ability to hear the warning that Mr. Mauger and his foursome issued.

{¶23} Upon review, we cannot conclude that the trial court erred when it entered summary judgment in favor of Mr. Mauger on Mr. Esposito's claim of reckless conduct. Mr. Esposito attempted to prove that it was reckless for Mr. Mauger to hit his tee shot because he should have known that Mr. Esposito was within striking range. Yet, Mr. Esposito was not playing on Mr. Mauger's fairway. Mr. Mauger presented evidence of a customary rule of golf, which is that a player should delay hitting only if another player is ahead and within range on his own fairway. *See Maxwell v. Rowe*, 9th Dist. Wayne No. 97CA0075, 1998 WL 663228, *2 (Sept. 23, 1998). Mr. Esposito failed to present any evidence of a contrary, customary rule. Likewise, he failed to present any evidence to rebut the testimony that Mr. Mauger and at least one other member of his

foursome yelled fore when they saw his ball heading toward Mr. Esposito. Mr. Esposito and his father only stated that they did not hear the warning, and Mr. Esposito conceded that windy course conditions affected his ability to hear Mr. Mauger. While we are not without sympathy for the injury Mr. Esposito incurred, errant shots are "a foreseeable and not uncommon occurrence in the game of golf." *Thompson*, 53 Ohio St.3d at 106. Mr. Esposito failed to present evidence that Mr. Mauger consciously disregarded a known or obvious risk of harm to him that was unreasonable under the circumstances and was substantially greater than negligent conduct. *See Anderson*, 134 Ohio St.3d 380, 2012-Ohio-5711, at ¶ 34. As such, the trial court did not err by awarding Mr. Mauger summary judgment on Mr. Esposito's complaint. Mr. Esposito's sole assignment of error is overruled.

## III.

{¶24} Mr. Esposito's sole assignment of error is overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

KEVIN J. BREEN, Attorney at Law, for Appellant.

KIMBERLY K. WYSS, Attorney at Law, for Appellee.